IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CT-3015-FL

| | | |
|---|---|---|
| KENNETH EARL COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DAMAR MATHIS and JASON STALLWORTH, | ) | |
| | ) | |
| | ) | |
| Defendants.[1] | ) | |
| | ) | |
| | ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 46). Plaintiff responded in opposition to the motion and in this posture the issues raised are ripe for ruling.

**STATEMENT OF THE CASE**

Plaintiff, a pretrial detainee proceeding pro se, commenced this action by filing complaint and corrected complaint, asserting claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. Plaintiff subsequently filed two motions for leave to amend his complaint. See (DE 9, 10). After conducting a review of plaintiff's pleadings pursuant to 28 U.S.C. § 1915(e)(2)(B), the court allowed plaintiff to proceed with his claim asserting defendants assaulted him during a cell extraction at Central Prison, in violation of the Fourteenth Amendment to the United States Constitution. Defendants, sued in their individual capacities, are Damar Mathis ("Mathis") and

---

[1] The court constructively amends the case caption to reflect dismissal of plaintiff's claims against formerly named defendants Sergeant Gabo, Sergeant L. Hinton, Lieutenant Perry, Sergeant Vanderhoof, and Sergeant Parker on September 25, 2023.

Jason Stallworth ("Stallworth"), both of whom were correctional officials at Central Prison during the relevant time period. As relief, plaintiff seeks compensatory damages, and declaratory relief. On December 10, 2024, plaintiff filed a motion to view video footage.

Following a period of discovery, and in accordance with the case management order, defendants filed the instant motion for summary judgment. Defendants argue that their conduct did not amount to a constitutional violation and that they are entitled to qualified immunity as to plaintiff's Fourteenth Amendment claim. In support, defendants rely upon memorandum of law, statement of material facts, and appendix of exhibits thereto comprising the following: 1) declarations of defendants Mathis and Stallworth; 2) declaration of Amy LaRosa, a medical records manager with the North Carolina Department of Adult Correction ("DAC"); 3) declaration of Kimberly Grande, the executive director of the Inmate Grievance Resolution Board; 4) plaintiff's administrative remedy documentation; 5) the DAC's disciplinary records; 6) Central Prison's policies and procedures regarding use of force; 7) declaration of Brenda Corbett-Moore, a captain with the DAC assigned to Central Prison; 8) plaintiff's medical records from the relevant timeframe; and 9) a surveillance video. Defendants also filed unopposed motion to seal the medical records and a motion to manually file a video exhibit. On January 21, 2025, the court granted defendants' motion for leave to manually file their video exhibit.

Plaintiff responded in opposition to the motion for summary judgment and filed a verified statement of material facts and an appendix of exhibits. On August 25, 2025, plaintiff filed a motion requesting the appointment of counsel. On September 19, 2025, the court denied plaintiff's motion requesting the appointment of counsel, but granted his motion to view the video footage and directed defendants' counsel to provide plaintiff the opportunity to view the video

2

evidence. The court also stayed the case and administratively terminated defendants' motion for summary judgment. Finally, the court granted defendants' motion to seal. After plaintiff was provided the opportunity to view video evidence, the court lifted the stay and provided plaintiff additional time to respond to defendants' motion for summary judgment. On January 27, 2026, plaintiff filed his supplemental response and appendix.

## STATEMENT OF FACTS

Except as otherwise noted below, the court recounts the facts in the light most favorable to plaintiff. Plaintiff was housed as a detainee at Central Prison during the relevant time period. (Defs' SOMF (DE 47) ¶ 1; (DE 56) ¶ 5).[2] On May 22, 2022, defendants Mathis and Stallworth were working on Central Prison's Unit One where plaintiff was housed. (Defs' SOMF (DE 47) ¶ 2). At approximately 5:00 am., defendants Mathis and Stallworth were called to plaintiff's cell in response to a report that plaintiff was throwing food out of the food passage door. (Id. ¶ 3). When the officers arrived at plaintiff's cell, they observed plaintiff with his arm hanging out of the cell and throwing what they believed to be fecal material, or some other unknown substance. (Id. ¶ 4). Plaintiff, however, states he was not throwing fecal material or any liquid out of his cell, but that he instead asked defendant Mathis to move into a new cell because his toilet was not working. (Pl.'s SOMF (DE 57) ¶ 2).

Defendant Mathis next ordered plaintiff to place his arm back inside his cell and to stop throwing things out of his cell. (Defs' SOMF (DE 47) ¶ 5). Plaintiff refused. (Id.) In response, Mathis administered two sprays of O/C spray into plaintiff's cell. (Id. ¶ 6; Pl.'s SOMF

---

[2]  Throughout this order, page numbers in citations to documents in the record are to the page number specified in the footer of the document supplied by the court's case management / electronic case filing (CM/ECF) system for the docket entry (DE) and not the page number, if any, showing on the face of the underlying document.

(DE 57) ¶ 4)). At approximately 6:09 am, defendants entered plaintiff's cell. ((Defs' SOMF (DE 47) ¶ 10; Pl.'s SOMF (DE 57) ¶ 5; (Use of Force Video 6:09:00).[3] At this point, the parties' version of events substantially differ. According to defendants, the officers entered plaintiff's cell, placed him in handcuffs, and escorted him to the medical unit for screening. (Defs' SOMF (DE 47) ¶ 10). Plaintiff disputes that defendants entered his cell before placing him in restraints. ((DE 7-1), p. 3); Pl.'s SOMF (DE 57), p. 12. 48).[4] Plaintiff instead states defendants applied handcuffs to plaintiff's wrists through the food passage door prior to entering his cell. (Id.); see also, ((DE 50-1), pp. 44, 48) (documentation from plaintiff's disciplinary proceedings indicating plaintiff was placed in restraints before defendants entered his cell). According to plaintiff, once the officers entered his cell they pushed him back into the cell and started attacking him. ((DE 7-1), p. 3; Pl.'s SOMF (DE 57), p. 12; (DE 56), pp. 2, 4). Plaintiff states defendant Mathis tried to force him onto his side while defendant Stallworth pulled his shorts down halfway and "grabbed [his] testicles and penis." ((DE 7-1), p. 3).

At approximately 7:30 am, defendants escorted plaintiff to the medical unit where plaintiff made the following statement to medical staff: "I was assaulted on my back and ribs. They used

---

[3] The video recording was filed manually with the clerk of court (DE 48-7). The video is soundless and captures what transpired outside of plaintiff's cell prior to and immediately after the use of force incident. The video does not capture what occurred inside of plaintiff's cell during the alleged use of force incident. Citations to the video correspond to the timestamp appearing on the recording.

[4] Plaintiff's "affidavit" is "sworn" before a notary pursuant to North Carolina law. See ((DE 7-1), p. 3). As a result, the affidavit is properly considered at summary judgment. See Jones v. Solomon, 90 F.4th 198, 206 n.7 (4th Cir. 2024) (concluding that a "notarial certificate for an oath or affirmation pursuant to North Carolina Law" is sufficient to construe filing as opposing affidavit at summary judgment); N.C. Gen. Stat. § 10B-43(a); N.C. Gen. Stat. § 10B-3(2)(C), (14)(c) (describing requirements for notarial act to satisfy "vow of truthfulness on penalty of perjury"). Plaintiff's statement of material facts is verified under penalty of perjury and therefore serve as an opposing declaration for purposes of the instant motion. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991); 28 U.S.C. § 1746; see also, Erickson v. Pardus, 551 U.S. 89, 94 (2007) (stating filings by pro se litigants should be construed liberally); (DE 57).

4

pepper spray but none of it got on me. They did not use a taser." (Defs' SOMF (DE 47) ¶ 12). Plaintiff also states he was having homicidal thoughts and told the nurse, "Oh yeah, I'm gonna get them." (Id. ¶ 13). While plaintiff does not dispute the contents of his medical records, he asserts he "did attempt to tell [the] nurse that [he] had also been assaulted on [his] back side and she inaccurately wrote assault on back and ribs only." (Pl.'s SOMF (DE 57) ¶ 9). Plaintiff further states that when he attempted to inform the nurse that he had been sexually assaulted, the nurse responded: "I don't wanna hear about your genitals and private parts." (Id.) Later the same evening, plaintiff was screened by medical providers prior to being moved to restrictive housing and "voiced no complaints" and "had no visible injuries. (Defs' SOMF (DE 47) ¶ 14).

The next day, plaintiff completed a witness statement which provided:

> On 5-22-22 5:00 a.m. Sgt. Mathis, Stallworth and Gipson came to my door first time after he told me he was gonna move me to 12 up C-west. Yes, I had a cup of coffee and my arm out of the trap. Sgt Mathis then started spraying but I blocked it and he came and closed the slot. Then around 5:30 or 6:00 am. Sgt Mathis and Ofc Stallworth came back to my door and said cuff up Imma let you move to 12 up are you packed? I said yes complied to cuff the door open Sgt. Mathis push me back in the cell and him and ofc. Stallworth assaulting me with blows to my lower back. I went down Sgt. Mathis was forcing me on my stomack saying "turn the [] over" and then he sat on my back while Stallworth pull my shorts down and grab my balls [and] penis saying "w[here the knife at [].” I was still cuffed.

See ((DE 50-1) p. 49). On April 24, 2022, plaintiff was medically evaluated for a second time. See ((DE 50-3), p. 178). Plaintiff reported to medical staff that he had pain on his left back side and again stated defendants Mathis forced him to the ground and that Stallworth grabbed his penis and testicles. (Id.) On May 23, 2022, June 1, 2022, and February 14, 2023, plaintiff filed grievances in which he raised the same allegations against defendants. (Defs' SOMF (DE 47)

¶ 17; (DE 67-3), p. 17; (DE 59-5), p.6.   In response, prison officials at Central Prison investigated plaintiff's allegations pursuant to the Prison Rape Elimination Act, and found no evidence to support the allegations.   (Id. ¶¶ 18, 19).

In October 2022, plaintiff began complaining of a swollen right testicle and a "knot" in his left testicle.   ((DE 50-3), p. 132).   Medical staff performed an ultrasound which revealed plaintiff had a cyst in his right testicle and enlarged veins.   (Id. p. 126).   Plaintiff was referred to a urologist for further treatment.   (Id.)   On December 14, 2022, medical staff again saw plaintiff in response to his report of "testicular swelling which started in May 2022 after someone reportedly pulled on his testicles during an assault."   (Id. p. 114).   Then, on January 4, 2023, plaintiff was transported to Raleigh Emergency Medicine Associates for bilateral testicular pain and swelling.   (Id. pp. 91-97).   Plaintiff again attributed his condition to the May 22, 2022, incident.   (Id.)

Plaintiff was charged with the following three disciplinary offenses arising out of the May 22, 2022, incident:   1) committing an assault on a staff member by throwing liquids or spitting on a staff member; 2) willfully tampering with, damaging, or blocking any camera, locking device, fence, door, gate, window, or cell light; and 3) willfully disobeying, failing to obey, or causing another offender to disobey or fail to obey any lawful order to which subject, or cause another to be in an unauthorized location.   (Defs' SOMF (DE 47) ¶ 22).   Plaintiff pleaded guilty to the second and third charges.   (Id. ¶ 23).

## DISCUSSION

A.      Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R.

6

Civ. P. 56(a).   The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."   Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).[5]

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment.   See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party).   "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   Id. at 249.   In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor."   Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the

---

[5] Throughout this order, internal citations and quotation marks are omitted from citations unless otherwise specified.

necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace

v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982). Thus, judgment as a matter of law

is warranted where "the verdict in favor of the non-moving party would necessarily be based on

speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir.

2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable

inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at

489–90.

B.      Analysis

Defendants raise the affirmative defense of qualified immunity. The qualified immunity

analysis proceeds in two steps, which the court "may address in whichever sequence will best

facilitate the fair and efficient disposition of the case." Pfaller v. Amonette, 55 F.4th 436, 444

(4th Cir. 2022). First, the plaintiff must show a violation of a constitutional right. Id.; Stanton

v. Elliot, 25 F.4th 227, 233 (4th Cir. 2022). Second, defendants bear the burden of showing the

right at issue was not "clearly established" at the time of the alleged misconduct. Pearson v.

Callahan, 555 U.S. 223, 231 (2009); Stanton, 25 F.4th at 233.

The court first determines whether plaintiff can establish a constitutional violation.

Because plaintiff was a pretrial detainee at the time of the incident with Mathis and Stallworth, his

excessive force claim is governed by the Fourteenth Amendment[6] and the "objective" standard set

forth in Kingsley v. Hendrickson, 576 U.S. 389 (2015). The court must determine whether the

defendants' use of force was "objectively unreasonable" in light of the particular "facts and

circumstances confronting them." Graham v. O'Connor, 490 U.S. 386, 397 (1989); see also

---

[6] Defendants incorrectly analyze plaintiff's claim as one pursuant to the Eighth Amendment.

8

<u>Kingsley</u>, 576 U.S. at 396–97. The court reviews the use of force from the perspective of a reasonable officer at the scene, "not with the 20/20 vision of hindsight," and must account for the officer's legitimate need to manage a correctional facility, including by preserving internal order and discipline and maintaining institutional security. <u>Kingsley</u>, 576 U.S. at 397. Several factors guide the court's evaluation, including: 1) the relationship between the need for a particular use of force and the amount of force used; 2) the extent of the detainee's injury; 3) the officers' efforts, if any, to temper or limit the amount of force; 4) the severity of the security problem presented by the detainee; 5) the threat reasonably perceived by the officer; and 6) whether the detainee was actively resisting the officer. <u>Id.</u>

Applying the <u>Kingsley</u> factors to the instant use of force allegations against defendants and construing the record as a whole in the light most favorable to plaintiff, genuine issues of material fact preclude summary judgment as to plaintiff's excessive force claim. In particular, crediting plaintiff's version of events, a jury could conclude that there was no need for defendants Mathis and Stallworth to use force against plaintiff once plaintiff was restrained inside of his cell and there was no reasonably perceived threat to defendants. <u>See</u> <u>Alexander v. Connor</u>, 105 F.4th 174, 179-182 (4th Cir. 2024); <u>Love v. Beasley</u>, 788 F. App'x 935, 937 (4th Cir. 2020) ("[W]here affidavits present conflicting versions of the facts which require credibility determinations, summary judgment cannot lie."); <u>Thompson v. Shelton</u>, 541 F. App'x 247, 250 (4th Cir. 2013) (per curiam); <u>Campbell v. Smith</u>, 406 F. App'x 741, 743 (4th Cir. 2010) ("Based on Campbell's version of events giving rise to this litigation, he was in handcuffs and restrained by McClinen when Smith hit him. If this version of events is accepted, a trier of fact could easily conclude that an Eighth Amendment violation occurred."); <u>see also</u> <u>Johnson v. Robinette</u>, 105 F.4th 99, 122 (4th Cir. 2024)

9

("Sexual abuse has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society. Nor does it comport with contemporary standards of decency.").

While defendants submitted a video recording, it does not show what happened once defendants entered plaintiff's cell. See generally (Use of Force Video). To the extent defendants contend plaintiff's alleged injuries are not consistent with his allegations related to the May 22, 2022, incident, the issue poses a genuine issue of material fact where there is no medical expert testimony interpreting plaintiff's medical records. See Scinto v. Stansberry, 841 F.3d 219, 230 (4th Cir. 2016); see also, Wilkins v. Gaddy, 559 U.S. 34, 38 (2010) ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). Based upon the foregoing, there is a genuine issue of material fact as to whether the defendant officers used force which was objectively unreasonable. Thus, the court at this stage cannot determine whether plaintiff can show a constitutional violation.

With respect to the second, "clearly established" prong, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 170 (4th Cir. 2016). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." Kisela v. Hughes, 584 U.S. 100, 104 (2018). And the court "must define the right in light of the specific context of the case, not as a broad general proposition." Younger v. Crowder, 79 F.4th 373, 385 (4th Cir. 2023). This "do[es] not require a case directly

on point, but existing precedent must have placed the . . . constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

Taking plaintiff's version of the facts as true, it was clearly established at the time of the incident here that officers cannot strike and otherwise intentionally inflict pain on a pretrial detainee restrained in handcuffs, who is not resisting the officers or otherwise refusing to comply with lawful directives.  See Dean v Jones, 984 F.3d 295, 310-11 (4th Cir. 2021); Thompson v. Commonwealth of Va., 878 F.3d 89, 102-05 (2017); Wernert v. Green, 419 F. App'x 337, 342 (4th Cir. 2011); see also, Short v. Hartman, 87 F.4th 593, 607 (4th Cir. 2023) ("Protections for pretrial detainees under the Fourteenth Amendment are at least as great as the Eighth Amendment protections available to a convicted prisoner.").  As a result, defendants were on fair notice that their conduct violated plaintiff's clearly established right to be free from excessive force in the context here.

At this preliminary stage of the case, defendants are not entitled to qualified immunity. For the same reason, genuine disputes of material fact preclude entry of summary judgment on plaintiff's excessive force claim.

**CONCLUSION**

Based on the foregoing, defendants' motion for summary judgment (DE 46) is DENIED. Before entering a trial scheduling order, the court requires that the parties participate in a court-hosted settlement conference.  Accordingly, pursuant to Local Alternative Dispute Rule 101.1, EDNC, this case is REFERRED to United States Magistrate Judge Kimberly Swank, for a court-hosted settlement conference, for the purpose of resolving all remaining issues in dispute.  The magistrate judge will notify the parties how she wishes to proceed.  Any decision regarding

11

appointment of counsel for plaintiff for purposes of the settlement conference shall be within the magistrate judge's discretion. In the event the parties do not reach a resolution of this action, further order regarding trial planning and scheduling will follow.

SO ORDERED, this the 10th day of July, 2026.

_____
LOUISE W. FLANAGAN
United States District Judge

Case 5:23-ct-03015-FL    Document 68    Filed 07/10/26    Page 12 of 12